**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X   Case No.:
MYRIAM ABDELAZIZ,

                         Plaintiff,                **COMPLAINT**

        -AGAINST-

TRINITY SCHOOL, JOHN ALLMAN, *individually*,  **PLAINTIFF DEMANDS**
STEPHEN KOLMAN, *individually*, and GREGG  **A TRIAL BY JURY**
EMERY, *individually*.

                     Defendants.
------------------------------------------------------------------X

      Plaintiff, MYRIAM ABDELAZIZ, by and through her attorneys, PHILLIPS &

ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants as follows:

**NATURE OF THE CASE**

1.    Plaintiff is a practicing Muslim and woman of color who worked for three (3) years as a

      Teacher of Photography at the prestigious Trinity School in Manhattan, New York. Despite

      consistently performing her job exceptionally, Plaintiff experienced increasingly harsher

      treatment than her white and/or male colleagues. After Plaintiff expressed her concern

      regarding this treatment, Trinity School terminated Plaintiff without following the required

      evaluation procedure that was afforded to Plaintiff's white and/or male colleagues. When

      Plaintiff dared complain again of continued discriminatory treatment at Trinity School,

      Defendants further retaliated against Plaintiff by defaming Plaintiff and sabotaging her

      career.

2.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

      U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991,

      Pub. L. No. 102-166 ("Title VII"), the New York State Human Rights Law, New York

State Executive Law §§ 296, <u>et</u>. <u>seq</u>. ("NYSHRL"); and the <u>New York City Human Rights</u> <u>Law</u>, New York City Administrative Code §§ 8-107, <u>et</u>. <u>seq</u>. ("NYCHRL").

3.      Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendants' discrimination and retaliatory derailment of her career in response to her outspoken complaints against systemic and institutional discrimination.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

4.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and 1343.

5.      The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York, or the acts complained of occurred therein.

7.      By: (a) timely filing an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 10, 2022; (b) receiving a Notice of Right to Sue from the EEOC on November 9, 2022; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

8.      That at all times relevant hereto, Plaintiff MYRIAM ABDELAZIZ ("Plaintiff") is a French American female of Egyptian/Arab descent, a practicing Muslim, and was a resident of the State of New York, Kings County.

9.      That at all times relevant hereto, Defendant THE TRINITY SCHOOL ("Defendant TRINITY") was and is a Private Day School duly existing pursuant to, and by virtue of, the laws of the State of New York.

10.     Upon information and belief, Defendant TRINITY employs fifteen or more employees.

11.     That at all times relevant hereto, Plaintiff has been an employee of Defendant TRINITY.

12.     That at all times relevant hereto, Individual Defendant GREGG EMERY ("EMERY") was a white male employed by TRINITY as the Head of the Visual Arts Department.

13.     That at all times relevant hereto, Defendant EMERY had supervisory authority over Plaintiff. Defendant EMERY had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same, including observing and evaluating Plaintiff's annual classroom performance.

14.     That at all times relevant hereto, Individual Defendant STEPHEN KOLMAN ("KOLMAN") was and is a white male employed by TRINITY as the Upper School Principal.

15.     That at all times relevant hereto, Defendant KOLMAN had supervisory authority over Plaintiff. Defendant KOLMAN had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same, including observing and evaluating Plaintiff's annual classroom performance.

16.     That at all times relevant hereto, Individual Defendant JOHN ALLMAN ("ALLMAN") was and is a white male employed by TRINITY as the Head of School.

17. That at all times relevant hereto, Defendant ALLMAN had supervisory authority over Plaintiff. Defendant ALLMAN had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same, including being the final decisionmaker in her termination.

18. That at all times relevant hereto, Defendants TRINITY, ALLMAN, KOLMAN and EMERY are collectively referred to herein as "Defendants."

## **MATERIAL FACTS**

19. On or about August of 2019, Plaintiff was hired by Defendants as a Teacher of Visual Arts at the TRINITY whose contract was to be evaluated and reviewed on an annual basis.

20. As a Teacher of Visual Arts and Photography, Plaintiff's duties included but were not limited to creating and successfully applying curriculums and lesson plans reinforcing course goals, encouraging creativity and self-expression among students while setting ambitious goals, and supporting students to meet or exceed them.

21. Defendant TRINITY's Employment Policy highlights that annually, teachers such as Plaintiff who are in their first three years at the School are to have two to three observational evaluations per school year during the first semester, each with a pre-meeting and post-meeting with the teacher.

22. After three years, teachers are reviewed on a less regular basis. The Policy states that contracts may be terminated at the end of this three-year "probationary" period if a teacher's performance fails to meet the school's standards of performance.

23. Said Policy also highlights that the School will make all reasonable efforts to advise the teacher before contracts are issued that they may not be offered employment for the following year. Said Policy is contained in the Employee Manual, which all faculty at Defendant TRINITY are required to sign and confirm every year to be in compliance.

24.    On or about mid-September of 2019, Plaintiff was informed by a female colleague to "watch out for Gregg Emery."

25.    On or about mid-September of 2021, Plaintiff and her colleagues returned to in-person employment after working remotely during the COVID-19 pandemic. Defendant EMERY was aware that Plaintiff was soon to graduate to less frequent mandatory evaluations.

26.    Prior to this time period, for approximately two years, Plaintiff and Defendant EMERY had a friendly working relationship and Plaintiff's performance reviews in 2019 and 2020, upon information and belief, were excellent.

27.    Upon Plaintiff's return to in-person teaching, Plaintiff noticed Defendant EMERY began micromanaging her performance and held her to higher standards than her white and non-Muslim male colleagues.

28.    On or about early October of 2021, Plaintiff visited TRINITY's psychologist to address issues including her fear of unjust termination, Defendant EMERY's concerning behavior, and the toll that Defendant EMERY'S disparate treatment took on her mental health. In response, the psychologist informed Plaintiff that Defendant EMERY was "gaslighting" her and immediately made an appointment for Plaintiff with Loretta McNamee of Human Resources.

29.    After Plaintiff complained about Defendant EMERY's mistreatment, Ms. McNamee stated to Plaintiff in sum and substance that Defendant EMERY "has had problems with women in the past. You are not the first woman to mention issues with him." Ms. McNamee instructed Plaintiff to follow up with Defendant EMERY himself to resolve any issues.

30.    Ms. McNamee also told Plaintiff not to worry about her job and assured Plaintiff that any changes to employment at TRINITY would go through TRINITY's Formal Evaluation Process. Ms. McNamee further explained that only staff with cumulative poor evaluations

and official warnings over extended periods of time were at risk of contract non-renewal, and assured that this did not apply to Plaintiff.

31.   On or about October 16, 2021, Plaintiff and Defendant EMERY had an e-mail exchange where Defendant EMERY expressed to Plaintiff that "each of [her] official evaluations from both Steve [KOLMAN] and myself have 90-95% glowing testaments of [her] work…"

32.   On or about Monday, October 18, 2021, Defendant Plaintiff gave a presentation to all of the students and staff of the Upper School of Defendant TRINITY regarding her photography book, We The People, an interactive conceptual photography project celebrating the diversity of American identity.

33.   During this presentation, Plaintiff emphasized the importance of celebrating diversity in both our local and national communities. She further explained her own experience as a female Muslim immigrant in the United States.

34.   After the presentation, Plaintiff received widespread praise and recognition for her work.

35.   Thereafter, Plaintiff experienced an immediate and noticeably heightened scrutiny from Defendant EMERY.

36.   On or about October 26, 2021, approximately a week following her presentation, Defendant EMERY conducted his first of two required formal observational evaluations of Plaintiff's Digital Photography class.

37.   During this evaluation, Plaintiff observed that Defendant EMERY was even colder and more distant than usual.

38.   However, in the post-observation meeting with Defendant EMERY, Defendant EMERY noted that Plaintiff's class had evolved beautifully since Plaintiff started teaching it.

Plaintiff felt confused by Defendant EMERY's inconsistent, worsening and erratic treatment.

39.     In or about December 10, 2021, Plaintiff met with and e-mailed Defendant EMERY in regards to the upcoming school year regarding hiring a new staff member for the department and requesting more hours.

40.     In his response, Defendant EMERY noted in an e-mail that the school might add on additional classes to Plaintiff's class load the following year and reiterated his satisfaction with Plaintiff's performance.

41.     On or about January 1, 2022, Plaintiff and Defendant EMERY received a notification that Plaintiff was being considered for a professional development grant that was approved by The Assistant Head of School, Alexis Mulvihill.

42.     On January 12, 2022, Plaintiff received e-mail notification that Defendant EMERY had cancelled her second formal observational evaluation scheduled for the following day, which was a violation of procedure.

43.     On January 24, 2022, Plaintiff was awarded said professional development grant in the amount of five thousand dollars US currency ($5,000.00), which was the highest amount ever approved for a faculty member at Trinity School.

44.     Thereafter, Defendant EMERY's scrutiny towards Plaintiff again noticeably increased, and his already hostile demeanor towards her persevered.

45.     When Plaintiff discussed this treatment with her white, male, and non-Muslim colleague, her colleague explained "[EMERY] always leaves me alone."

46.     Defendant EMERY did not discipline Plaintiff's white male and non-Muslim colleague for what he disciplined her for.

47.     Defendant EMERY did not react towards Plaintiff's white male and non-Muslim colleague's successes in the same manner he reacted towards Plaintiff's.

48.     On Friday, February 11, 2022, Plaintiff met with Defendant KOLMAN, Upper School Principal, for her scheduled evaluation pre-meeting. When Plaintiff arrived, Plaintiff was surprised to find Defendant KOLMAN sitting and laughing with Defendant EMERY. Defendant KOLMAN abruptly told Plaintiff that her contract would not be renewed and that she was no longer "the right fit" for Defendant TRINITY.

49.     Plaintiff then asked if Defendant KOLMAN was cancelling her procedurally mandatory evaluation as well as the pre-and post- evaluation meetings. To this, Defendant KOLMAN responded, "Yes, unless you still want me to do it."

50.     That same afternoon, at the end of the school day, Plaintiff reported this violation of TRINITY's procedure and policy to Defendant ALLMAN, Head of School and additionally expressed her confusion and concern.

51.     Shortly thereafter, on Monday, February 14, 2022, Defendant KOLMAN unexpectedly stopped by Plaintiff's classroom in the afternoon without the mandatory pre-evaluation meeting. Notably, this was Defendant KOLMAN's first opportunity to conduct the mandatory evaluation that he had previously canceled, and he conducted it in a manner in violation of procedure.

52.     The next day, on February 15, 2022, without the mandatory post-evaluation meeting, Plaintiff received her formal evaluation summary from both Defendant EMERY and Defendant KOLMAN. February 15, 2022, was the annual deadline for teachers to either acknowledge and sign their evaluation summaries or to hand in an answer if the teacher did not agree with the content of the evaluation

53.   Both Defendant KOLMAN and Defendant EMERY were aware that Plaintiff was not to be on campus that day and for the remainder of the week for an independent and prestigious photography project. Both Defendants KOLMAN and EMERY intentionally sabotaged Plaintiff's contract renewal.

54.   In Plaintiff's evaluation summary, Defendant EMERY's written words were in stark contrast to his positive verbal review on or about October 26, 2021. Additionally, Defendant EMERY noted a second observational evaluation that had not ever been conducted.

55.   Defendant KOLMAN's evaluation similarly included inaccurate information based on his observation that was unexpected and missing both its pre- and post-evaluation meetings.

56.   Defendant EMERY and KOLMAN's evaluations were retaliatory and in response to Plaintiff's complaint to Human Resources.

57.   In contrast to other non-Muslim/Arab and male teachers at Plaintiff's level and in violation of Defendant TRINITY's policy, Plaintiff was not given a second observational evaluation nor the required pre- or post-evaluation in-person discussions prior to termination.

58.   On or about mid-February of 2022, Plaintiff spoke with another female colleague who informed Plaintiff that she had formally complained several times to Human Resources about Defendant EMERY in the few weeks prior.

59.   On or about March 4, 2022, Plaintiff submitted a formal response to Defendant ALLMAN, Head of School, contesting inaccuracies and misrepresentations in her evaluations and expressing feeling discriminated against on the basis of her religion and gender.

60.   On or about March 11, 2022, Plaintiff was informed via e-mail that Defendant EMERY was stepping down from his position as Head of the Visual Arts Department.

61.   Defendant TRINITY had knowledge of and/or acquiesced in the discrimination and/or harassment by Defendants EMERY and KOLMAN.

62.   On or about March 11, 2022, Plaintiff inquired to Human Resources again regarding the status of her contract.

63.   She again expressed that the basis of her nonrenewal was Defendant EMERY and Defendant KOLMAN's biased, inaccurate, and misrepresented evaluations.

64.   Ms. McNamee of Human Resources stated she would double check with Defendant ALLMAN as it was his final decision. Approximately an hour later, Plaintiff was then informed by Ms. McNamee that the status of her contract renewal was not changing, effectively terminating Plaintiff.

65.   Therefore, Defendant TRINITY acquiesced to Defendant ALLMAN, EMERY and KOLMAN's discriminatory conduct.

66.   On April 25, 2022, Plaintiff's counsel mailed Defendants a claim letter and draft of a Complaint outlining Plaintiff's alleged claims of discrimination against Defendants.

67.   After this date, Defendants began their campaign of retaliation for Plaintiff's bringing her claims against Defendants.

68.   On April 28, 2022, Plaintiff received an e-mail from Joan Dannenberg, Chief Financial Officer at Trinity School, which was addressed to and sent to all of Defendant TRINITY's faculty that read in pertinent part:

> Trinity School has been asked to preserve and maintain all documents and information relevant to the employment of Myriam Abdelaziz at Trinity School, including without limitation, all communications between the School and Ms. Abdelaziz and all communications in the possession of the School referring or relating to Ms. Abdelaziz. This document retention demand extends to all documents relating to this matter, regardless of their form or format (i.e., paper documents, word processing or spreadsheet files, e-mails, physical apparatuses [phones, etc.] and any similar computer files or data). Those documents must be preserved from this point forward.

> Until further notice, please do not engage in any routine policies or processes of destruction, recycling, alteration or relocation of any of the above described documents.

69.   Plaintiff felt harassed and humiliated by this e-mail. Rather than instructing Information Technology services to handle the preservation of all electronic data, Defendants publicized Plaintiff's matters and maliciously sent an e-mail to their entire staff.

70.   Following this e-mail, a colleague that Plaintiff saw on a daily basis began ignoring her. Plaintiff on numerous occasions would try to say hello to said colleague, and colleague would turn in the opposite direction and avoid all eye contact.

71.   On May 6, 2022, Plaintiff was contacted by a student to conduct an interview regarding Plaintiff's departure from TRINITY.

72.   This confused Plaintiff, as she had not shared her termination with her students.

73.   When Plaintiff asked how the student came upon this information, the student informed Plaintiff that Defendant KOLMAN informed the student that Plaintiff was leaving.

74.   Afterwards, a few more students asked Plaintiff in her classes why she was leaving.

75.   Plaintiff felt targeted, harassed, and uncomfortable by Defendant KOLMAN's behavior and disclosure of her affairs.

76.   On May 3, 2022, Plaintiff began the interview process for the Head of Art position at The British International School of New York.

77.   On May 11, 2022, after Plaintiff's interviews, Megan Seier, the Executive Assistant to the Headmaster at The British International School of New York, emailed Plaintiff to "please provide contact details for your current school's Head of School for a reference." Ms. Seir noted "we are finalizing things now and are looking to make an offer."

78. On May 13, 2022, Ms. Seier informed Plaintiff that Ms. Seier contacted Defendant ALLMAN for the necessary reference.

79. On May 19, 2022, nearly a week later, Ms. Seier informed Plaintiff that Defendant ALLMAN had not provided a reference.

80. On May 23, 2022, Plaintiff approached Defendant ALLMAN during work hours and inquired as to the aforementioned reference. Defendant ALLMAN stated he had sent over the necessary referral and indicated his excuse for not having sent it earlier was that the email was 'in the spam.'

81. On May 27, 2022, Ms. Seier confirmed via e-mail that The British International School of New York had received Defendant ALLMAN's reference.

82. Upon information and belief, Defendant ALLMAN provided a false and misleading reference to The British International School and actively indicated that he would not re-hire Plaintiff, quashing her ability to be rehired.

83. On June 2, 2022, Ms. Seier informed Plaintiff that The British International School of New York would no longer be able to offer Plaintiff the Head of Art position.

84. Defendant ALLMAN purposely provided his reference to Plaintiff's prospective employer in further retaliation against Plaintiff because of her anti-discrimination complaints against Defendants.

85. Before Defendant ALLMAN's reference, Plaintiff had every reason to believe she would be hired based upon her interviews and communications with Ms. Seier.

86. On June 2, 2022, Plaintiff spoke to a former female employee who previously filed a formal complaint of harassment and gender discrimination against Defendant EMERY.

87. This prior female employee explained to Plaintiff that, thereafter, no other disciplinary actions were taken by Defendant TRINITY.

12

88. Defendants' actions and conduct were malicious, intended to harm Plaintiff, and to undermine the success of a woman of color

89. As of the time of filing this charge, Defendant ALLMAN, Defendant EMERY and Defendant KOLMAN are still employed by Defendant TRINITY.

90. The above are just some of the ways Defendants discriminated against and retaliated against Plaintiff both during and after her employment with Defendants.

91. **<u>Plaintiff was discriminated and retaliated against by Defendants, solely due to her gender, national origin, and religion and complaints of said discrimination</u>**.

92. But for the fact that Plaintiff dared challenge the status quo as a Muslim Woman of Arab descent, Defendants would not have retaliated against her.

93. Plaintiff has been unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled, and as a result, suffers the loss of rights, emotional distress, loss of income, and earnings.

94. Defendants' collective actions threw Plaintiff into an economic upheaval and derailed what would have been a celebrated and economically abundant career.

95. Defendants' collective actions have also deeply affected Plaintiff's non-professional life. Plaintiff may need to relocate out of the country to find comparable employment, disrupting her life and causing further emotional distress and psychological harm in addition to lost wages and benefits.

96. As a result of Defendants' actions, Plaintiff feels extremely disheartened, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

97. As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**First Cause of Action for Discrimination**
**Under Title VII**
**(Not Against Individual Defendants)**

57.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

58.   Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled

"employer practices," provides that:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status an employment, because of such individual's race, color, religion, sex, or national origin.

59.   Defendant TRINITY violated the sections cited herein as set forth.

60.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Second Cause of Action for Retaliation**
**Under Title VII**
**(Not Against Individual Defendants)**

95.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

96.   Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees… to discriminate against any individual… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

14

97.     Defendant TRINITY engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

98.     Defendant TRINITY violated the sections cited herein as set forth.

99.     Plaintiff is entitled to the maximum amount allowed under this statute.

**Third Cause of Action for Discrimination**
**Under the New York State Executive Law**
**(Against All Defendants)**

100.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101.    New York State Executive Law § 296(1) provides that:

    It shall be an unlawful discriminatory practice:

    (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

102.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her color, creed/religion (Muslim), and sex.

103.    Defendants violated the sections cited herein as set forth.

104.    Plaintiff is entitled to the maximum amount allowed under this statute.

**Fourth Cause of Action for Retaliation**
**Under the New York State Executive Law**
**(Against All Defendants)**

105.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

106.    New York State Executive Law § 296(1) provides that:

    It shall be an unlawful discriminatory practice:

    (e)  For any employer, labor organization or employment agency to
         discharge, expel or otherwise discriminate against any person
         because he or she has opposed any practices forbidden under
         this article or because he or she has filed a complaint, testified
         or assisted in any proceeding under this article.

107.    Defendants violated the sections cited herein as set forth.

108.    Plaintiff is entitled to the maximum amount allowed under this statute.

**Fifth Cause of Action for Discrimination**
**Under the New York City Administrative Code**
**(Against All Defendants)**

109.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

    this complaint.

110.    New York City Administrative Code § 8-107(1) provides that:

    It shall be an unlawful discriminatory practice: (a) For an employer
    or an employee or agent thereof, because of the actual or perceived
    age, race, creed, color, national origin, gender, disability, marital
    status, partnership status, caregiver status, sexual orientation,
    uniformed service, or alienage or citizenship status of any person, to
    refuse to hire or employ or to bar or to discharge from employment
    such person or to discriminate against such person in compensation
    or in terms, conditions or privileges of employment.

111.    Defendants engaged in an unlawful discriminatory practice in violation of New York City

    Administrative Code § 8-107(1)(a) by discriminating against Plaintiff because of her color,

    creed/religion (Muslim) and gender.

112.    Defendants violated the sections cited herein as set forth.

113.    Plaintiff is entitled to the maximum amount allowed under this statute.

**Sixth Cause of Action for Discrimination**
**Under the New York City Administrative Code**
**(Against Individual Defendants)**

16

114.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

115.   New York City Administrative Code § 8-107(6) provides that:

> It shall be an unlawful discriminatory practice for any person to aid,
> abet, incite, compel or coerce the doing of any of the acts forbidden
> under this chapter, or to attempt to do so.

116.   Defendants ALLMAN, KOLMAN, and EMERY violated the sections cited herein as set

forth.

117.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Seventh Cause of Action for Retaliation**
**Under the New York City Administrative Code**
**(Against All Defendants)**

118.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

119.   New York City Administrative Code § 8-107(7) provides, in pertinent part, that:

> It shall be an unlawful discriminatory practice for any person
> engaged in any activity to which this chapter applies to retaliate or
> discriminate in any manner against any person because such person
> has (i) opposed any practice forbidden under this chapter, (ii) filed
> a complaint, testified or assisted in any proceeding under this
> chapter…

120.   Defendants violated the sections cited herein as set forth.

121.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Eighth Cause of Action for Vicarious Liability**
**Under the New York City Administrative Code**
**(Not Against Individual Defendants)**

122.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

123. New York City Administrative Code § 8-107(13) entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor" provides that:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

124. Defendant TRINITY violated the section cited herein as set forth.

## **JURY DEMAND**

103. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq., the New York State Human Rights Law, New York State Executive Law, §§ 296 et. seq., and the New York City Human Rights Law, Administrative Code §§ 8-107 et seq., in that Defendants discriminated, and retaliated against Plaintiff on the basis of his race;

B.      Awarding Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

C.      Awarding Plaintiff punitive damages;

D.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
January 9, 2023

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**


By:       /s/*Shawn Clark*
Shawn R. Clark, Esq.
Melissa Vo, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
sclark@tpglaws.com
mvo@tpglaws.com

# EXHIBIT A

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Myriam Abdelaziz**<br>c/o Phillips & Associates, Attorneys at Law, PLLC 45 Broadway,<br>Suite 430<br>New York, NY 10006 | From:  **New York District Office**<br>33 Whitehall St, 5th Floor<br>New York, NY 10004 |

| EEOC Charge No.<br>**520-2022-06324** | EEOC Representative<br>**Michael Woo,**<br>**Investigator** | Telephone No.<br>**929-506-5348** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS of your receipt of this notice</u>**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

Less than 180 days have elapsed since the filing date. I certify that the Commission s processing of this charge will not be completed within 180 days from the filing date.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Timothy Riera
11/09/2022

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc:   **John  Allman**
**Trinity School**
**139 W 91ST ST**
**New York, NY 10024**
**Nancy Wright**
**Wilson Elser Moskowitz Edelman & Dicker**
**nancy.wright@wilsonelser.com**

**Shawn R Clark**
**Phillips & Associates, Attorneys at Law, PLLC**
**45 Broadway Suite 430**
**New York, NY 10006**